Good morning your honors and may it please the court Rick Ashton on behalf of Highway Equipment Company Inc. At this time I'd like to reserve three minutes for rebuttal. In this statutory interpleader action, the District Court erred when it held that Columbus Equipment Company had a priority above Highway Equipment, which may be confusing as Columbus Equipment, I represent Highway Equipment, who perfected and had a lean priority based upon a creditor's bill as of December 29, 2014. Initially I will state that the ruling on the interpleader action rendered a decision that cannot be reconciled on its face because that determination was that Columbus Equipment had a priority on the funds at issue based upon a garnishment and a creditor's bill. But garnishments and creditor's bills are mutually exclusive methods by which a creditor can attach. A garnishment is when there is a present right, nothing contingent, so a bank account. The money is sitting there, it's that claimant's money and they can go in and grab it through a garnishment. A creditor's bill is for the situation where there is not a present right and it is not contingent. I don't believe that this court needs to reconcile or deal with that reconciliation because both bases relied upon by the District Court for both the creditor's bill as well as the garnishment were an error. And does that error take us right into a misnomer? I don't think it takes us right into a misnomer, although, Your Honor, yes, that is certainly one of our arguments. And I guess I will start with the aspect of the misnomer, if I recall correctly, was truly dealt with when the court was talking about the garnishment. And that's when the court made the determination that that was some sort of unregistered trade name that one of the defendants in the creditor's bill, Access MLP Operating, was operating under called Access, Access Midstream, my apologies. And so, yes, that is one of the major issues with all of this. And if I may take a step back in dealing with that issue with respect to the creditor's bill, and I will deal with it with the garnishment as well, creditor's bills are unique in that it is a lawsuit filed to a debtor's debtor. So a creditor is going to collect monies from someone who owes them money. And this is under Ohio law. One of the issues or one of the things in obtaining a perfected creditor's bill is you have to commence with certainty. And then you have to commence the case. Commencing the case is what establishes, once you've met those two criteria, that's your priority, that's your pecking order as to where you stand as to when those monies do become available to that debtor that owes you money, that is where you have now stood in line or have placed yourself in line. And the issue with respect to Columbus Equipment's creditor's bill is it named this entity, this entity that no one knows what it is, access midstream, whatever that is. So there is no ink, no code, no LLC after it, just access midstream. And I think it's important to point out that in the Ohio Supreme Court's case in Patterson, the Ohio Supreme Court says a lawsuit can never be commenced against a non-entity. In this case, access midstream was a non-entity. In partially dealing with that, the magistrate judge below held that in the statutory interpleader action that was brought by Columbus Equipment, which was ultimately removed to the Northern District of Ohio, so that was a case that was ultimately consolidated into the statutory interpleader action where all the parties were competing. And in that, the magistrate held that Judge Loy noted that uncontested service was affected on October 8th and why service matters is because that's where you set your place in line. But what the judge failed to recognize is that prior to that answer being filed, access MLP operating LLC, which is the entity that held the money that everyone was fighting over, removed the case to federal court and stated in paragraph 14 of its removal petition that access midstream is not a legal entity. Also, in the answer that was relied upon by Magistrate Judge Jolson below, she failed to state that there were things that cut against sort of that argument that there was this service. And I think specifically if you look at the creditor's bill complaint, there was denials of paragraphs 3 and 4 of the creditor's bill complaint where access MLP operating denied that it owed money or that it had certain equitable and or interest in the possession of defendant access midstream. There it's stating plainly, we don't have the money that is owed by this entity that has been labeled as access midstream. There was also affirmative defenses out there, failure state claim upon which relief can be granted as well as failure to join necessary and or dispensable parties. So I think that's important because at that point in time, which would have been October 27th, 2014, highway equipment knew that access midstream was not an entity. The true contracting party that owed the money to the individual that everyone was fighting about was an entity called Access MLP Operating LLC. And you say that, you make the argument that U Highway, that service was not affected until well, almost a year after, there was an attempt on October 9th of 2014, to have access MLP operated in September of 2014. And service was actually effectuated in September of 2015, when Columbus filed to amend the complaint renaming access. And are you saying that they had some knowledge during all of this time and that they didn't act on that to name the entity? That's correct, Your Honor. And if I may take a step back, the original creditor's bill complaint that named access midstream, which is the non-entity, that was filed I believe around October 3rd, 2014. On October 27th, 2014, that was the removal. So that's where Access MLP Operating LLC comes in and says there is no access midstream. The non-entity was removed to federal court. That's correct. That's when it was removed. And so the key being, yes, was there an amended complaint that was filed that I don't think there's any proof in the record when that amended complaint was served. That's truly, I think, irrelevant from our point of view because our creditor's bill, which correctly named Access MLP Operating LLC, was filed and we obtained service on December 29th, 2014. That puts us first in line. Correct. So, what had happened, though, is in that motion for relief to amend the complaint filed by Columbus Equipment, which was prepared by Columbus Equipment, provided to the judge in the state court action after it was remanded, had language in there that it relates back. And so that relation back was not to save a statute of limitations, which is typically the relation back doctrine, so that you can preserve a statute of limitations. It was to jockey position. And that jockeying of position, I'm sorry, Your Honor? Did the court have the authority to make that finding? Rather it related back? Well, it wasn't contested. So I think two aspects of that, Your Honor. It wasn't contested. It was a proposed order provided by Columbus Equipment that was ruled on the next day. So no one had the opportunity to contest it. And frankly, at that point... Did you contest it post-entry? Well, we argued about it with respect to the... It's going to be issue preclusion. We're saying, us, as highway equipment, you can't apply that against us. That's issue preclusion. You can't... And that's what Judge Jolson did in the district court. Went out, looked to the state court action, said, well, the state court said it relates back, so that forecloses... And that was the actual language. It forecloses highway equipment's argument that service was deficient or the complaint improperly sought property in the possession of access midstream. So, Your Honor, does a court, and in that court, have the ability to relate back? Well, I think it depends on the... What arguments are made. And I think the statement that was made by Columbus Equipment in presenting that is no party is going to be prejudiced. Well, maybe no party to that case, but certainly parties in this statutory interpleader action were being impacted by that case. There was no other reason for it to relate back. It's a creditor's bill. It's not like you're trying to preserve a statute of limitations. The only reason that language was put in there was, once again, to jockey position back in front of my client. And if we look at the Ohio Constitution, Article 4, Section 5B, it says that the rules of civil procedure, upon which the motion for leave to amend was filed, cannot abridge, enlarge, or modify any substantive right. That's what it's doing here. It is modifying a right that highway equipment had in time on December 29, 2014 when it perfected itself. The amended complaint was filed well after, had knowledge that it was the wrong party, but was filed well after, and had it relate back by a judge that was unrelated to the statutory interpleader action that was pending in the district court. And also, I would look to your honor, is that, and this is the case, In re Garden in Stake House, a bankruptcy case of the Northern District of Ohio, that states that presumably if there was an intent to provide for relation back of perfection, the Ohio legislature could have easily included it in the statute. And that's dealing with priority of liens. In this case, the applicable statute, 233.01, which is the creditor's bill, has no relation back aspect. And so I think it was improper, as a matter of law, for the court to even apply issue preclusion for a matter for which we were not a party. But second of all, even if it were to, it was ineffective anyway, because it was violative of Ohio law. Okay. And in this case, you all have not yet conducted discovery and all of that because of this initial ruling. Is that correct? Well, the initial ruling was the final ruling. So there was, interpleaders happen in two instances, or two phases. One phase is determining whether the court has jurisdiction and is the fund going to be placed in that court. That happened a while back. And then, a few months later, what happened, it changed magistrates. And the magistrate had a couple of status conferences and says... So before we got to that point, was there any ADR methods employed in attempting to get this resolved? I see I'm out of time. May I answer that question, Your Honor? Yes. No. There was no discovery. This happened on a super expedited basis and at every... There were two status... That's the answer. Yeah. No. Yeah. Thank you. Absolutely. Thank you, Your Honor. All right. Good morning. May it please the court, Mr. Ashton. My name is Jeff Sams. I represent Columbus Equipment in these proceedings. I believe this matter turns on an application of Ohio revised code section 1329.10C and the Ohio Supreme Court decision, Family Medical Foundation versus Bright, a 2002 Ohio Supreme Court determination. And the upshot of those two doctrines is that a party who does not know the true name of the person they are attempting to sue may sue that person by using the commonly used trade name. And that's specifically what the statute says and what the Ohio Supreme Court held. But don't they have to still be diligent in trying to ascertain the true name? Yes. And it seems like there's an argument that there was a lack of diligence on your part. We actually submitted to the trial court what our diligence was, that we had conducted judgment debtor examinations twice. We had issued four garnishment proceedings, three of which had been returned unserved. And where we learned of the access midstream name was in the judgment debtor examination of the at your service representative, which is the entity against whom we have judgment. We are not in contractual privity with access midstream. We have no independent knowledge of who they are. We simply learned that that's who it was. There was a search done at the Ohio Secretary of State's office, which is a matter of public record, to see that access midstream, the only name that we knew, is not a registered trade name. So it is an unregistered trade name. I think that there is some confusion precipitated by the appellant's brief between this use of non-existent entity and unregistered trade name. I would submit it's the same thing. Different courts use slightly different language perhaps to employ that. It's the same thing. It's an unregistered trade name is what access midstream was. And Judge Donald, to go to your question of counsel about this time, we filed our creditor's bill against access midstream in early October 2014 in Carroll County, Ohio Common Police Court. At the end of October, after we had obtained service against all of the parties, access midstream and at your service, certified mail service back with green cards in the file, access midstream files a removal of that case to the Northern District Court in Ohio. And at that point, basically, we're stopped in our tracks. It is demonstrated by the fact that the Judge Leoy never took jurisdiction in that case. She remanded the case and said she declined to take jurisdiction for reasons that aren't germane to this appeal. But also, Texas State Bank filed a motion to intervene while the case was pending to that extent in federal court. And when Judge Leoy ruled on the motion to remand and remanded, she said, not only am I remanding, I am not considering this because I'm not taking jurisdiction and therefore I'm not ruling on any other motions. We certainly considered filing a motion to amend the name, but determined not to for that very reason, frankly. But as soon as... What was the basis of the removal? The basis of the removal was that it was diversity and consent of all the parties. The basis for the remand was that the access... I'm sorry, that at your service did not consent until after the time period had run, even though Access Midstream represented in their, not only their removal petition, but their amended petition, that they had the consent of all parties, when in fact, they did not. And Judge Leoy, in her opinion, which is in the record, in my view, had a rather scathing last half of the opinion of Access Midstream for having removed this, knowing that they did not have the proper basis to do so and the consent of all the parties in order to do that. But once she remanded it, we then moved diligently, promptly, to file a motion to correct the name, because by that time we had learned about it. But also remember that after, and we've addressed this in our brief, even after they get this opaque notice that, well, we're really, here's our name, once they remove it, they continued to file pleadings saying Access Midstream this and Access Midstream that, continued in the garnishment proceeding in Franklin County, Ohio, where we got our judgment, referring to themselves as Access Midstream. So they didn't even begin referring to themselves strictly by what their true corporate name was. They continued to use the Access Midstream name for an extended period of time, even after their attempted removal. Once we got the remand, we filed our motion to change the name, correct the name, which the judge granted. Yes, it was done promptly, but to Mr. Ashton's point, nobody objected. Nobody filed a subsequent motion. Nobody appealed. And coupled with that, Mr. Ashton admits that there's prejudice to highway equipment. They never filed a motion to intervene. And almost never is there another creditor made a part of a creditor's bill. Your goal is to get the person who owes your debtor money, get that filed, and get your creditor's bill. And then, just as Judge Jolson did in this case, he sorted it out later. Who got there and got it done first? And I submit we got it there and got it done first. And I think that this name issue really is, in part, I use the analogy, this is a Kennedy half dollar. I've always had an affinity for these coins. Many people call them 50 cent pieces. It doesn't matter whether you call it a Kennedy half dollar or a 50 cent piece. It's the same coin. Just like Access Midstream or Access MLP operating LLC, it's the same thing. Everybody knew it was the same thing. We submitted an abundance of evidence to the trial court to demonstrate that Access Midstream was an unregistered trade name. We demonstrated that the contract that we didn't have at the time demonstrates on every page Access Midstream is their shorthand version of their name. Filing it to Ohio Supreme Court by their corporate counsel, in-house counsel, said his employer was Access Midstream. They filed pleadings saying they were Access Midstream in the garnishment proceeding. They filed pleadings in the Carroll County in the removal action saying they were Access Midstream. They admitted in the garnishment action that they were Access Midstream and that they had the money. The key, I think, to all of this is nobody misunderstood this fact. Yes, the correct technical name wasn't on the creditor's bill pleading, but it's the same thing. It's the same person. Revised Code 1329.10c in Family Medical Foundation Ohio Supreme Court case clearly state that is permissible. Now, counsel relies upon the Patterson case, but the Patterson case was clearly distinguished by the Family Medical Foundation file because on the simple grounds that 1329.10c wasn't addressed in Patterson. But then the four cases that their primary cases they rely upon are all distinguishable on the grounds that in that case the plaintiff or the claimant either knew the correct person or entity name or should have known because it was registered at the Ohio Secretary of State's office. We don't have that in this case. And I would also tell you they did not submit any evidence to the trial court to say here's the registration, here's why Columbus Equipment should have known when it filed its creditor's bill, the true name for Access Midstream. They didn't submit that because it doesn't exist. Let me ask, let me back up just a minute. It was while the case, if I'm, memory serves me, while the case was in federal court on the removal, that was during that window of time that Highway filed their collector's bill. Filed its what? Filed their collector's. Creditor's bill. Creditor's bill, I'm sorry. They filed in the Northern District of Ohio. They had gotten their Now, in that filing, did, was there any acknowledgment of the fact that this removed case was in the court? It was just independently. You chose to file in state court your, excuse me, creditor's bill. They chose to file in federal court. Either, you could have filed, I suppose, in federal court or? Yeah, presumably. That's irrelevant. We didn't know if our Access Midstream, we didn't know if we had jurisdiction. They chose a different jurisdiction. I mean, that's the way creditor's bills work. They didn't give us notice that they'd filed theirs. We didn't give notice at the time because we didn't know of their existence, but then they never filed a motion to intervene into ours either. To your knowledge, were they aware of the case that had been removed to federal court? There certainly would have come a point while it was pending in federal court that it was pending because one of the arguments that they and others were making was we need to basically consolidate that court, that case from the Northern District into this case from the Southern District and my case from Franklin County, common pleas, into one case to determine all of this. Frankly, I'm the one who resisted that. I did not believe it was appropriate to do so because we had our garnishment action filed and Judge Frye had ordered the money in. Ultimately, the magistrate judge disagreed, ordered the money to be paid in. Subsequently, that amount was increased and we entered onto this understanding of how we're going to proceed to resolve the interpleader action. But I don't believe, whether they knew, I don't know, but at some point they came to and at some point we came to learn that they had their creditor's bill action pending in the Northern District. In regards to the discovery issue that Judge Donald mentioned by Mr. Ashton, I just want to state the entry, the order referring, it's in the record, it's docket 57, page 394, states that the court held a conference and the parties' agreement, based upon the parties' agreement, this is how we're going to proceed. That's what happened. In response to that order, nobody filed an objection. Nobody filed a motion for reconsideration. Nobody asked for any discovery, expedited discovery. At this point, the Rule 26F conference had already been held even before Columbus Equipment and Highway got in the case and discovery was available for all parties to move forward, either pursuant to just the regular rules or by asking for leave to do so. Highway Equipment never did any of that. In fact, if you look at the highway brief in the trial court, you will see what discovery they asked for is discovery against Texas State Bank. They never raised with the trial judge that they wanted to do any discovery with regards to Columbus Equipment. They never raised that issue by the same... When was it first raised? On appeal? Here, yes, in their brief to this court. I also want to suggest to the court that if you go back and look at their pleadings in the trial court, they never raised the name issue in the trial court that they are raising in this court. They are raising that issue for the first time in this case. I will agree that they did raise the name issue. They raised an issue about whether or not it was appropriate to amend the relation back, but they did not raise the issue about Patterson in the cases I call Highway 4. Highway 4 cases, not one of those cases are referred to in either one of their briefs in the trial court. We don't know how Judge Johnson would have ruled on that issue and 1329.10C and Patterson and Family Medical Foundation because those issues were not presented to the trial court for the trial judge to resolve. I would also submit that as we've cited in our brief, there are a number of cases that have also distinguished Patterson that on the basis of the grounds of whether or not somebody had knowledge, whether or not it's even a sole proprietorship. Patterson is a very narrow application of a sole proprietorship, knowledge by the plaintiff of the sole proprietor owner and instead sued just the trade name. 1329.10C and Family Medical Foundation submit that how we proceeded was appropriate. I also want to address, in case you get to that point, this relation back issue, if you have belt and suspenders, put in the relation back language in our motion to Judge Oliveto in Carroll County and in his order he stated that it relates back. I submit that based upon 1329.10C and Family Medical Foundation, relation back is not even needed because filing in the name of Access Midstream was the same as filing against Access MLP Operating LLC because it was the only name that we knew and it was clearly their trade name that they were using that was unregistered. Relation back gets me a stronger position in my view and to answer your question, clearly the trial judge had the discretion to do that and it is not strictly a statute of limitations issue. There's any number of other issues why relation back can be important but the trial court clearly had the discretion. In fact, I would submit under Rule 15C had the duty because the rule clearly supports it and the judge had the duty to apply it whether or not statute of limitations was an issue. The Federal Rule 15C has a statute of limitations component to it. The Ohio Rule does not and presumably if the Ohio rule makers wanted to have that in their rule, they could do so but it's not in there. Therefore, I believe that number one, relation back is not needed to reach the conclusion that we named the right party under Ohio rules, Ohio law and the Bright case but also even if you look at it and relates back, it's still we got the service done. Everybody knew who it was and as demonstrated by the garnishment action, Access Midstream knew who they were, they knew they got the order, knew they held the money and admitted they held the money that they then ultimately paid into court in federal court in Columbus and there was no confusion by any party as a result of any of that and clearly that money was available and was paid in and should have been paid in for Columbus Equipment's benefit. Was the funds still being held, anything been dispersed? No, the fund has been still being held by the clerk in the district court in Columbus. More of a curiosity question than anything, where is Kirk excavating in all of this? Well, it was one of my concerns about joining all of these matters that Kirk really didn't have a dog in the fight. They had started this case in Franklin County Common Police Court, it got removed to district court but they were so far down the line, I mean, they couldn't beat anybody in that case that I had been imploring for a year and a half or a year before we got to the point of filing the briefs of tell us what your position is, tell us why you think you have a claim and there was another company called Horizon, why do you think you have a claim? And they wouldn't respond. I think the trial judge eventually saw through that and was like, okay, I'm going to put on a briefing schedule with everybody's consent and tell me what your position is and then one brief to tell me why everybody else is wrong and why you still win. They didn't even file a brief. So the answer is, they're probably owed money. Access, I'm sorry, at your service essentially went out of business owing lots of people money. So they're probably still owed money but they have no claim on this fund and no dog in the fight. Take a breath and let Judge Skagit answer the question. There's still a nominal party in the case, of course, and they haven't made any effort to, it doesn't appear, to get involved in this appeal. Are they still actively pursuing relief, pursuing a claim for monies? I suppose technically they are. Judge Jolson put out an order that them and Access were supposed to file some stipulation about what their intentions were and or dismiss. They haven't dismissed. So technically their claim is still pending. It was a concern that I had raised with Mr. Ashton and he very professionally let me know why he thought this was a final appeal of order and I agreed with him. That's why I didn't challenge it. So technically that is still pending there and has not been dismissed to the best of my knowledge. Judge Seiler, any questions? I respectfully request that you affirm and thank you very much for your time. Thank you, sir. A few points in response, Your Honors. I think it's important to point out the timeline in this case. Columbus Equipment, I'm sorry, Highway Equipment, my client waived service on March 2, 2016. The first brief to deal with all of the interpleader actions was due on April 28, a little over a month later. We had two status conferences. During both of those status conferences, I as well as my colleague Rick Stovall, who is in the office or in the courtroom with us today, were in the office and we had both requested discovery. On the telephone conference, both times Judge Jolson denied that. And so the actual entry that Mr. Sam's referred to was us agreeing to the schedule after it was already determined no discovery. We are doing no discovery in this. Was an order entered on the denial? No, nothing was ordered on the denial. And to say that the first time we're raising this discovery issue on appeal would be an incorrect statement. If you look at our opening brief before Judge Jolson, it says we need discovery, Your Honor. We're saying we need discovery. We had a whole section towards the end of our opening brief before the district court on that very issue, raising it for the third time. Is this discovery basically that you wanted on the due diligence issue as to what the correct name was? Absolutely. That would be one of the issues, Your Honor. I think there were multiple things. This was a war amongst four parties at that point. There was a bank out there. We wanted to find out what... We haven't even seen the loan documents at that point. We could only see what was in the public record. So there was no discovery. But there was a lot of evidence that was proffered by Mr. Sams that was never part of the lower court record about what was disclosed during a judgment debtor exam. There's nothing in the record that supports that. And so part of our discovery would be what did you know and when did you know it? And that flows within the case law out of Ohio. I think I would refer you to the Scaglione case. And you're right, Your Honors. This is equity. This is a... A creditor's bill is an equitable action. You cannot sleep on your rights. You cannot wait 11 months after you find out the right name to go and amend and do something along those regards. And so I think that's an issue. The naming issue, I think, also needs to be brought up because we did raise that in our opening brief that they did not name the correct party. They named this fictitious entity. And this whole argument that came up about it being a trade name came up in Columbus Equipment's responsive brief. So there was two briefs in the district court. We each got to file an opening brief and then a responsive brief. We never had a chance. So the first time it was brought up that this was a trade name that they served was brought up in their responsive brief. So we never had a chance to raise it but for before this court. And Judge Scholz grabbed onto that. And I think if you look at her opinion, she cites to two pieces of evidence to suggest that it was a trade name. One, unbelievably, is the actual contract. The contract, which I will readily admit, it says Access Midstream at the top. And then you look right below it, it says this is an agreement for a pipeline between Access MLP Operating LLC and at your service construction. We're all lawyers. We know. You look at contracts, who are the parties? The party, page one, Access MLP Operating LLC. The last page, the signature block, Access MLP Operating LLC. So that is not something you can rely upon when you know the exact party. For those reasons, unless there are any further questions, the district court's decision should be reversed. Any other questions? Thank you very much. The matter is submitted.